UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATHY R., | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
| v. | )    2:21-cv-00095-JDL |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) |
| | ) |
|    Defendant | ) |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the November 29, 2019, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 11-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. § 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of anxiety disorder and depressive disorder. (R. 15.) The ALJ further determined that despite Plaintiff's impairments, Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, except Plaintiff cannot climb ladders, ropes or scaffolds; she must avoid concentrated exposure to pulmonary irritants or extreme cold; she is limited to performing simple tasks, can tolerate only a small group of co-workers, and cannot tolerate interaction with the public.

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including the representative occupations of laundry laborer and hand packager.[2] (R. 38-39.) The ALJ determined, therefore, that Plaintiff was not disabled. (R. 27-28.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind

---

[2] The vocational expert testified that Plaintiff also could perform the occupation of store laborer, but the ALJ noted that that job requires occasional climbing of ladders, ropes or scaffolds, which was inconsistent with the RFC and not adequately explained by the vocational expert. (R. 27 n.1.) The ALJ concluded that even with the store laborer position eliminated, the laundry laborer and hand packager jobs were available in significant numbers in the national economy. (*Id.*)

might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred in evaluating the expert medical opinions when he assessed Plaintiff's RFC. Citing the Supreme Court's decisions in *Seila Law, LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), Plaintiff also argues that the ALJ's decision is constitutionally invalid because the Social Security Act limits the President's authority to remove the Commissioner of Social Security without good cause, violating the separation of powers doctrine.

### A. Expert Opinions

Plaintiff contends the ALJ erred when (1) he found unpersuasive the opinion of Kelleryn Wood, ANP, who conducted a consultative examination of Plaintiff in February 2019, observed that Plaintiff demonstrated a fine intentional tremor in both hands, and limited Plaintiff to only occasional handling and fingering with either hand,[3] and (2) found the opinions of Mark Nash, PA-C, and state agency medical consultants Edward Ringel,

---

[3] At the administrative hearing, Plaintiff testified that her hand tremors were intermittent and that the tremor in her left hand is worse than the tremor in her right hand. (R. 46.) Plaintiff stated that she is right-handed. (*Id.*)

M.D. and James Hall, M.D., to be persuasive on the issue of manipulation. Plaintiff contends the error was in effect dispositive because the vocational expert who testified at the hearing stated that a limitation to occasional handling and fingering bilaterally, together with the other limitations of Plaintiff's RFC, would preclude all employment. (R. 55.)

The ALJ's findings are supportable. First, he noted that the results of a consultative examination in August 2018, conducted by Mr. Nash, included no mention of hand tremors or any related limitations.[4] (R. 16, 1069-73.) The ALJ also found the opinions of Drs. Ringel and Hall were well-supported by their comprehensive review of the medical record. (R. 25.) Neither Dr. Ringel nor Dr. Hall assessed manipulative limitations in their respective RFC determinations.[5] (R. 63, 71.) The ALJ reasonably found the determinations of Drs. Ringel and Hall to be more persuasive because they were more consistent with Plaintiff's course of treatment, her activities, physical examinations, and other objective evidence. (R. 26, citing 771, 821, 831, 847, 970, 1065, 1286, 1792).

The ALJ's conclusion that the opinions of Drs. Ringel and Hall are consistent with Plaintiff's activity level is sound and supportable. The ALJ noted that Plaintiff's activities of daily living (driving, using a computer, preparing meals, washing dishes, vacuuming, coloring in coloring books, and doing bead work) suggest no significant limitation in the use of her hands. (R. 16-17; *see* R. 213-17, 229-33, 1018, 1064, 1066, 1261-62, 1872.)

---

[4] Mr. Nash found Plaintiff showed no evidence of tremor, had good hand-eye coordination, and was able to demonstrate fine dexterous movement. (R. 1070-71.)

[5] Dr. Hall included the postural limitations of never climbing ladders, ropes, or scaffolds, which limitations were ultimately adopted by the ALJ, but attributed the limitations to Plaintiff's obesity rather than to manipulation issues. (R. 71.)

"[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations."[6] *Rucker v. Colvin*, No. 2:13-cv-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted); *see also Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018).

Plaintiff's contention that the ALJ's reliance on the consultants' opinions is unsupportable because neither consultant considered the results of Ms. Wood's examination is also unpersuasive. Dr. Hall reviewed and summarized the results of Ms. Wood's evaluation, noting specifically Plaintiff's report of "hand tremors last couple yrs," and Ms. Wood's observation of "[f]ine [bilateral] hand intentional tremors" and "fine dexterous movement." (R. 68.) Dr. Hall accurately observed that in her Adult Function Report, Plaintiff did not assert that her impairments affected any of her physical functions. (R. 72, 217.)

In sum, the ALJ supportably resolved the conflict between the opinions of Ms. Wood and the opinions of Mr. Nash, Dr. Ringel, and Dr. Hall. *Rodriguez*, 647 F.2d at 222

---

[6] Social Security Ruling 16-3p "provides guidance about how [components of the Social Security Administration will] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act) and blindness claims under Title XVI of the Act." 81 Fed. Reg. at 14166. In the statement of purpose, the Ruling explains that based on a commissioned study, the Administration determined it should "eliminat[e] the use of the term 'credibility' from [its] sub-regulatory policy," i.e. former Ruling 96-7p, because the term does not appear in the Administration's regulations. *Id.* at 14167. Nevertheless, "the deferential standard of review [of an ALJ's evaluation of a claimant's allegations of disabling symptoms] . . . continues to apply following the adoption of SSR 16-3p, but for the use of the term 'credibility.'" *Christopher D. v. Berryhill*, No. 1:17-cv-377-JHR, 2018 WL 4087477, at *4 (D. Me. Aug. 24, 2018).

("resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts."). The ALJ did not err.

## B. Separation of Powers

Plaintiff argues that the removal provision of the Social Security Independence and Program Improvements Act of 1994 (Act) violates the separation of powers doctrine and, therefore, is unconstitutional. Under the Act, the Commissioner is appointed for a term of six years and may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). In *Collins* and *Seila Law*, the Supreme Court held that analogous tenure protections violate separation of powers and are therefore unconstitutional. *Collins*, 141 S. Ct. at 1783-87 (statute limiting President's authority to remove Director of the Federal Housing Finance Agency (FHFA) unconstitutional); *Seila Law*, 140 S.Ct. at 2197-2207 (provision of the Dodd-Frank Act restricting removal of the Consumer Financial Protection Bureau's Director unconstitutional).

Courts in other jurisdictions have found the removal protection for the Commissioner of the Social Security Administration (SSA) in § 902(a)(3) is similarly unconstitutional. *See, e.g.*, *Brand v. Kijakazi*, -- F. Supp. 3d. --, 2021 WL 5868131, at *5-6 (D. Nev. Dec. 10, 2021) (collecting cases). Defendant does not argue to the contrary.[7] The reasoning of other courts is persuasive and consistent with the Supreme Court's recent

---

[7] Defendant also does not contest Plaintiff's standing to raise the issue, and other district courts have found that Social Security applicants have standing to challenge the constitutionality of the statute. *See, e.g., Tafoya v. Kijakazi*, -- F. Supp. 3d --, 2021 WL 3269640, at *4-5 (D. Colo. July 29, 2021).

precedent. The issue is whether the constitutional infirmity invalidates the administrative decisions in this matter.

The Supreme Court has found that similar removal provisions to § 902(a)(3) are severable from their respective statutes. *Collins*, 141 S.Ct. at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office …."); *Seila Law*, 140 S.Ct. at 2209, 2245. Other courts have concluded that if the removal provision of § 902(a)(3) were stricken from the Act, the SSA would remain fully functional. *See, e.g., John R. v. Comm'r Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, at *6 (W.D. Wash. Nov. 16, 2021). Other courts, therefore, have concluded that officials who are "properly appointed" pursuant to statutes that exhibit "no constitutional defect in the … method of appointment" are not stripped of power to undertake the other responsibilities of their offices. *Robinson v. Kijakazi*, Civil Action No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021). The reasoning of the other courts is sound and there is "no reason to regard any of the actions taken" by the SSA in this case as automatically void. *Alice T. v. Kijakazi*, 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021), quoting *Collins*, 141 S. Ct. at 1787, 1788 n.23. Rather, Plaintiff "must show that the "unconstitutional provision [] inflict[ed] compensable harm." *Brand*, 2021 WL 5868131, at *5 (quoting *Collins*, 141 S.Ct. at 1788). Plaintiff must establish a "link" between the adverse action and the unconstitutional tenure-protection provision. *Id.*

Plaintiff does not challenge the appointment of the ALJ, any member of the Appeals Council, or former Commissioner Saul. Plaintiff also does not directly challenge the ALJ's

7

decision, which is dated November 29, 2019.[8]  Indeed, there is "no nexus between any action by President Biden in removing Commissioner Saul in 2021 and Plaintiff's earlier denial of benefits" by the ALJ in 2019.  *Brand*, 2021 WL 5868131, at *6.

Plaintiff instead contends the Appeals Council's February 8, 2021, decision is invalid.  In support of her argument, Plaintiff cites the following discussion in the *Collins* majority opinion:

> [I]t is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out.  Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal.  Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way.  In those situations, the statutory provision would clearly cause harm.

141 S.Ct. at 1789. Plaintiff maintains President Biden plainly would have removed Commissioner Saul before the Appeals Council decision.  To support her contention, Plaintiff points to (1) President Biden's removal of Commissioner Saul the day after the Department of Justice issued a memorandum confirming the constitutional infirmity of the removal provision after the *Collins* decision and (2) the following quote from a White House official upon Commissioner Saul's removal:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, … reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

---

[8] Defendant notes that the ALJ served under a ratification of his appointment by Acting Commissioner Berryhill, who, Defendant argues, was removable at will, citing 42 U.S.C. § 902(b)(4).

Plaintiff argues the situation the *Collins* majority suggested would satisfy the necessary nexus between the unconstitutional provision and the harm alleged by a plaintiff exists here.

Plaintiff's argument is unconvincing. Even if the discussion in *Collins* can be construed as definitively establishing a nexus when a President states publicly that a commissioner would have been removed but for the statute, the record does not include such an express statement by President Biden. The statement upon which Plaintiff relies was attributed to a "White House official" and not the President. In addition, the fact that President Biden removed the Commissioner soon after the DOJ's opinion regarding the applicability of the *Collins* decision to the statute does not necessarily mean President Biden would have removed Commissioner Saul within three weeks of President Biden's inauguration. In this case, the action challenged by Plaintiff is the Appeals Council's denial of review of the ALJ's decision denying benefits, and "Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement—or even awareness—by the former [or current] President in the ALJ's [or Appeals Council's] decision." *John R.*, 2021 WL 5356719, at *7.[9]

At oral argument, Plaintiff maintained that because the Program Operations Manual System (POMS), which is the operational reference used by SSA employees to conduct the SSA's daily business, and the Hearings, Appeals, and Litigation Law Manual (HALLEX),

---

[9] Plaintiff's inability or failure to allege any involvement is consistent with Justice Kagan's observation in her concurring opinion in *Collins*: "[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone…. When an agency decision would not capture a President's attention, his removal authority could not make a difference." 141 S.Ct. at 1802

which provides procedural guidelines for processing and adjudicating claims, give ALJs and the members of the Appeals Council significant discretion in handling claimants' applications, Plaintiff necessarily suffered compensable harm with an adverse administrative decision. Plaintiff, however, cites no evidence to suggest a change in policy implemented by or a directive from Commissioner Saul influenced the Appeals Council's decision. In other words, "Plaintiff has not shown that whether the President could remove the SSA Commissioner without limitations … impacted the independence of the ALJ [or Appeals Council] or [their] decision[s] in Plaintiff's case." *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 446897, at *2 (D. Nev. Sept. 29, 2021). Plaintiff, therefore, has not demonstrated that the removal provision caused compensable harm. Accordingly, Plaintiff's request for remand based on her constitutional challenge fails.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of January, 2022.